UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re Kobalt Music Publishing America, Inc. Coordinated Copyright Cases*<br><br>*This filing relates to:*<br><br>All Coordinated Cases | 24-cv-05454 (ER) (BCM)<br>24-cv-05455 (JAV) (BCM)<br>24-cv-05456 (AKH)(BCM)<br>24-cv-05457 (JGK) (BCM)<br>24-cv-05458 (VM) (BCM)<br>24-cv-05459 (JAV) (BCM)<br>24-cv-05460 (LJL) (BCM)<br>24-cv-05462 (GHW)(BCM)<br>24-cv-05463 (JLR) (BCM)<br>24-cv-05464 (JGK) (BCM)<br>24-cv-05465 (GHW)(BCM)<br>24-cv-05466 (JHR) (BCM) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) and leave granted by this Court during the February 10, 2025 Initial Case Management Conference in this matter, Defendants in the above-referenced cases (the "Coordinated Defendants") hereby move to compel the production of documents sought in subpoenas served on non-party TuneSat LLC in each of the above case numbers (the "Coordinated Cases").[1] For the reasons discussed below, the Coordinated Defendants request that the Court enter an order compelling TuneSat LLC to fully comply with each of the subpoenas.

---

[1] The Coordinated Defendants are: Cavaliers Operating Company LLC; The Denver Nuggets Limited Partnership; Pacers Basketball LLC; Miami Heat Limited Partnership; Minnesota Timberwolves Basketball Limited Partnership; New Orleans Pelicans NBA, LLC; New York Knicks, LLC; Philadelphia 76ers LP; Suns Legacy Partners LLC; Trail Blazers Inc.; Sacramento Kings Limited Partnership; and San Antonio Spurs LLC.

1

## BACKGROUND

**I.     TuneSat LLC and the Coordinated Defendants' Subpoenas**

TuneSat LLC is a Delaware limited liability company that maintains its principal place of business at 1650 Broadway, Suite 1114, New York, New York 10019. (*See* "Home" page of TuneSat LLC's website, available at [TuneSat](TuneSat).) According to its website, "TuneSat is an independent audio monitoring service" that uses technology to "monitor[] hundreds of TV channels, helping rightsholders collect millions of dollars that otherwise would have been lost. . . . TuneSat subscribers use this valuable data to recover lost royalties, protect their copyrights, and gain unparalleled business intelligence." (*Id*. at "FAQ's" page.) Plaintiffs in the Coordinated Cases—a group of these alleged "rightsholders"—are TuneSat's clients. The rightsholders use the information TuneSat provides them to file lawsuits like the Coordinated Cases, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* C. Woods Tr. at 161:7-20, attached hereto as Exhibit A.)

Because of its close business relationship with Plaintiffs, TuneSat has in its possession various communications that are relevant to Plaintiffs' claims and Coordinated Defendants' defenses in the Coordinated Cases. Among other documents, TuneSat's Chief Operating Officer, Chris Woods, testified that TuneSat possesses:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2]     Mr. Woods testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A at 33:23-34:3.) Because TuneSat failed to produce these and other documents in response to Coordinated Defendants' first subpoena to TuneSat, discussed below, Coordinated Defendants asked Mr. Woods on the record ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 33:25-34:3; 53:25-54:3.) Mr. Woods ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 34:4; 54:4.)

[redacted]

Similarly, Rob Christensen, the Executive Vice President of Kobalt Music Publishing—one of TuneSat's clients and a Plaintiff in the Coordinated Cases—testified that Kobalt Music "provide[s] [TuneSat] information regarding [Kobalt Music's] catalog . . . [b]y way of sending them documents, including our work ID, the song title, the percentage share that we represent, associated ISRCs [International Standard Recording Codes] for recordings that are affiliated with that composition, that sort of catalog level data." (*See* R. Christensen Tr. at 62:21-63:3, attached hereto as Exhibit B.) According to Mr. Christensen, this information is "[t]ypically" sent to TuneSat "via Excel files" attached to emails. (*Id*. at 63:4-9.) Mr. Christensen further testified that Kobalt Music's purpose in sending TuneSat this information is to "investigate potential infringements of [Kobalt's] copyrights . . . . TuneSat Scans various platiforms and internet websites to look for detections of the use of our copyrighted music." (*Id*. at 61:21-62:11.)

The subpoenas at issue in this Motion, dated January 20, 2025, required TuneSat to produce these and similar communications sent to or received by TuneSat.[3] More specifically, the January 20 subpoenas were necessary to compel TuneSat to produce documents the Coordinated Defendants had requested in a prior subpoena, but which TuneSat refused to produce. (*See* Nov.

---

[3] On January 20, 2025, counsel for Coordinated Defendants emailed 13 individual subpoenas to counsel for TuneSat, one for each of the 13 Coordinated Defendants in the Coordinated Cases. (*See* Jan. 20, 2025 email from D. Slovick to R. Cohen, attached hereto as Exhibit C.) By return email dated January 22, 2025, counsel for TuneSat acknowledged receipt of the subpoenas and agreed to accept service on behalf of TuneSat. (*Id*.)

22, 2024 TuneSat Subpoena, attached hereto as Exhibit D (requesting, among other documents, "*any documentation* evidencing the date on which such Archived Version [of the relevant media sites] was created") (emphasis added).) The documents called for by the January 20 subpoenas, in turn, are directly relevant to a "claim or defense" in each of the coordinated cases, *see* Fed. R. Civ. P. 26(b)(1)—namely, Coordinated Defendants' statute of limitations defenses—because they are relevant to the date on which Plaintiffs knew or should have known of the copyright infringement alleged in Plaintiffs' Complaints. (*See infra* at 7-8.)

The January 20, 2025 subpoenas were not extensive; they called for only 4 categories of documents, some of which may well overlap. However, given TuneSat's failure to produce "any documentation" in response to Coordinated Defendants' first subpoena, counsel was compelled to spell out in detail the second time around what documents TuneSat was obligated to produce:

**DOCUMENT REQUESTS**

1. All emails and other **Communications** relating to the **Portland Trail Blazers**.

2. All emails and other **Communications** relating to actual or proposed searches of any **Media Sites** relating to the **Portland Trail Blazers**, including but not limited to emails or other **Communications** relating to **Detection Results** associated with such searches.

3. All emails and other **Communications** reflecting or otherwise relating to the date or dates on which **TuneSat** generated an **Acoustic Fingerprint** for each of the **Subject Songs**.

4. All emails and other **Communications** reflecting or otherwise relating to the date or dates on which **TuneSat** performed any Internet search to create such **Acoustic Fingerprint** for each of the **Subject Songs**.

(*See* Jan. 20, 2025 Portland Trailblazers Subpoena, attached hereto as Exhibit E).[4] As their limited scope demonstrates, the subpoenas were not designed to burden TuneSat. Instead, as explained

---

[4] The four requests in the attached subpoena in the Portland Trailblazers case are identical to the requests in the other 12 subpoenas, except that the name of the Defendant is different in each subpoena. To

above, the requests were necessary to compel TuneSat to produce documents that Coordinated Defendants had requested in their first subpoena, but that TuneSat refused to produce. Nor were the second subpoenas a "fishing expedition," as TuneSat has suggested; again, both TuneSat's Chief Operating Officer and one of the Plaintiffs in the Coordinated Cases (Kobalt Music Publishing) admitted in their depositions that the documents the subpoenas call for do, in fact, exist, and that they are relevant to Coordinated Defendants' defense to Plaintiffs' infringement claims. (*Supra* at 2-3.)

## II. TuneSat LLC's Response to the Subpoenas

On January 31, 2025, counsel for TuneSat notified counsel for Coordinated Defendants that TuneSat would not produce any documents called for by the January 20, 2025 subpoenas. Pursuant to paragraph 2.b. of this Court's Individual Practices, on February 6, 2025, the parties met and conferred by telephone about TuneSat's response to the subpoenas. During the call, counsel for TuneSat told counsel for Coordinated Defendants that TuneSat's refusal was due to what he claimed to be the burdensomeness or overbreadth of the subpoenas. Counsel further stated that TuneSat's refusal to produce documents was based in part on his belief that Judge Rakoff had previously ruled, in the single case that was not made part of the Coordinated Cases, *Artist Publishing Group, LLC, et al. v. Orlando Magic, Ltd.*, No. 24-cv-5461, that TuneSat's initial document production was "sufficient." TuneSat's counsel did not offer to produce a narrower group of documents responsive to the subpoenas or to compromise in any other way—TuneSat's refusal was absolute.

As this Court explained to the parties at the February 10, 2025 Initial Case Management Conference, prior rulings made by Judge Rakoff in the *Orlando Magic* case are not binding on this

---

avoid burdening the Court with redundant papers Coordinated Defendants did not file the remaining 12 subpoenas with this Motion, but will do so at the Court's request.

5

Court. Even if they were, though, Judge Rakoff did not rule that TuneSat was excused from complying with the defendants' second subpoena because its document production was "sufficient." Instead, on January 27, 2025, he ruled—without elaboration—that "Defendants' latest [*i.e.*, second] subpoena against nonparty TuneSat is quashed." (*See* Jan. 27, 2025 Minute Order in *Artist Publishing Group, LLC, et al. v. Orlando Magic, Ltd.*, No. 24-cv-5461.) In the same Minute Order, Judge Rakoff allowed the parties to file letter briefs "[r]egarding Defendants [sic] request relating to TuneSats [sic] compliance with its *earlier subpoena*." (*Id.* (emphasis added).) After Judge Rakoff had "considered those letter briefs," he ruled, in relation to the "earlier subpoena," that "TuneSat has more than reasonably replied to the request that the Magic made." (*Artist Publishing Group, LLC, et al. v. Orlando Magic, Ltd.*, No. 24-cv-5461, at Dkt. No. 38.) But as the text of Judge Rakoff's order makes plain, the ruling did not pertain to the second subpoena that he "quashed" because TuneSat did not reply to that subpoena at all—"reasonably" or otherwise. Intentionally or not, TuneSat is confusing Judge Rakoff's rulings on the two subpoenas. Judge Rakoff never ruled that TuneSat's response to Defendant Orland Magic's *second* subpoena was "sufficient."

## ARGUMENT

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides, in relevant part:

> If an objection is made [by a person commanded to produce documents], the following rules apply:
>
> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

Fed. R. Civ. P. 45(d)(2)(B)(i). Parties moving to compel the production of documents under Rule 45(d)(2)(B)(i) "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Oasis Medical, Inc. v. I-Med Pharma USA Inc.*,

23-MC-206 (ALC) (BCM), 2023 WL 6301728, at *8 (S.D.N.Y Sept. 1, 2023) (Moses, Mag. J.). Beyond that requirement, however, the scope of discovery under Federal Rule of Civil Procedure 45 "does not change based on party status." *Kenyon v. Simon & Schuster, Inc.*, No. 16 Misc. 327 (P1), 2016 WL 5930265, at *5 (S.D.N.Y. Oct. 11, 2016). " 'The non-party witness is subject to the same scope of discovery under [Federal Rule of Civil Procedure 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34.' " *Id*. (quoting advisory committee's note to 1991 amendment to Rule 45); *see also Beare v. Millington*, No. 07-cv-3391 (ERK) (MDG), 2010 WL 234771, at *1 (E.D.N.Y. Jan. 13, 2010) (granting motion to compel non-party to comply with subpoena and ruling that a non-party witness is subject to the same scope of discovery as a party). Further, "Rule 45 (like Rule 34) reaches otherwise-discoverable documents in the recipient's 'possession, custody, or control' . . . regardless of who or what has legal title or equitable claims to those documents." *Oasis Medical, Inc.*, 2023 WL 6301728, at *8.

As an initial matter, TuneSat does not dispute that the documents called for by Coordinated Defendants' January 20, 2025 subpoenas are relevant to a "claim or defense" in the Coordinated Cases. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .") To the contrary, TuneSat conceded in a filing it made in the *Orlando Magic* case that data and information related to TuneSat's identification of potentially infringing uses of information—in whatever form that information takes—is directly relevant to "Defendant's Second Affirmative Defense in which it asserts that the claims in the complaint are barred by the statute of limitations in 17 U.S.C. § 507." (*See Artist Publishing Group, LLC, et al. v. Orlando Magic, Ltd.*, No. 24-cv-5461, Dkt. No. 30 at 2; *see also id.* at Dkt. No. 21 ¶¶ 46-49.) Specifically, the documents sought in the January 20 subpoenas are directly relevant to Coordinated Defendants' statute of limitations

7

defense because they establish when Plaintiffs and their agent TuneSat knew, or should have known, enough facts to lead them to seek legal advice for alleged copyright infringement.[5]

As for TuneSat's objections based on breadth and burden, TuneSat's blanket refusal to produce *any* documents called for by the subpoena suggests that it believes that *any* amount of work required of a non-party to produce documents is too much, and constitutes a valid basis for refusing to comply with a subpoena. But that is wrong. Non-party corporations like TuneSat are "subject to the same scope of discovery . . . as a party" to the litigation. *Kenyon*, 2016 WL 5930265, at *4-5 (rejecting non-party's argument that a document subpoena "impose[d] an undue burden because of the amount of effort [the non-party] would need to expend in order to locate responsive documents. . . . What [the non-party] describes as an undue burden is merely the typical process for a corporation responding to a document request"). TuneSat cannot refuse to comply with the January 20, 2025 subpoenas just because it will have to make an extra effort to do so.

Moreover, TuneSat's claim that it has been unduly put upon because it is a non-party is belied by the fact that TuneSat voluntarily inserted itself into the Coordinated Cases in order to make money. As TuneSat acknowledges, the sole purpose of its highly lucrative business is to locate information which it then passes on to its clients so that they can file lawsuits for alleged copyright infringement, as it did in the Coordinated Cases. (*See supra* at 2.) For its efforts, ▮ ▮ (*See* Ex. A at 161:7-20.) Like the plaintiffs it serves, TuneSat has intentionally interposed itself in the Coordinated Cases for its own

---

[5] Civil actions for copyright infringement must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In the Second Circuit, copyright infringement claims accrue upon "actual *or constructive* discovery of the relevant infringement . . . ." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (emphasis added). The "legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992). A claim accrues when a plaintiff "knows, or should know, enough of the critical facts" such that it would lead him or her to seek legal advice. *Parisienne v. Scripps Media, Inc.*, 19 Civ. 8612 (ER), 192021 WL 3668084, at *4. (S.D.N.Y. Aug. 17, 2021) (citation omitted).

8

financial gain, and should therefore be required to comply with the rules governing discovery just like any other litigant.

## **CONCLUSION**

For the reasons set forth above, Coordinated Defendants respectfully request that the Court (1) grant their Motion to Compel the Production of Documents from TuneSat LLC in its entirety, and (2) compel TuneSat LLC to produce all of the documents called for by the January 20, 2025 subpoenas served in each of the Coordinated Cases.

## **WORD-COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c), undersigned counsel hereby certifies that the foregoing Memorandum of Law in Support of Defendants' Motion to Compel the Production of Documents complies with the word-count limitations in the Rule and contains 2,288 words.

Dated: New York, New York
March 13, 2025

Respectfully submitted,

David S. Slovick
Barnes & Thornburg LLP
390 Madison Ave., 12th Floor
New York, NY 10017
dslovick@btlaw.com
(646) 746-2019

*Attorney for Coordinated Defendants*